# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **MICHAEL K. BOYD,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:10CV00063 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:   James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Roger W. Rutherford, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Shannon Petty, Assistant Regional Counsel, and Charles J. Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the final decision of the Commissioner.

## I

Plaintiff Michael K. Boyd filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act

("Act"), 42 U.S.C.A. §§ 401-433 (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g).

Boyd filed for benefits in October 2007, alleging disability since August 21, 2007, due to back injuries and memory problems suffered following an automobile accident. His claim was denied initially and upon reconsideration. Boyd received a hearing before an administrative law judge ("ALJ"), during which Boyd, represented by counsel, and a vocational expert ("VE") testified.

The ALJ found that Boyd retained the residual functional capacity to perform a range of light, unskilled work. Because such work existed in significant numbers in the national economy, the ALJ found that Boyd was not disabled. Boyd appealed to the Social Security Administration's Appeals Council, who denied his Request for Reconsideration. Boyd then filed a Complaint with this court objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Boyd was forty-four years old when he filed for benefits, a person of "younger age" under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). Boyd, who has a

high school level of education, was previously self-employed as the owner of an auto mechanic business. Boyd has not engaged in substantial gainful activity since August of 2007.

On August 21, 2007, Boyd presented to the emergency room after being in an automobile accident. X rays revealed no fractures, but he was diagnosed with a lumbar strain and discharged with medication for pain, muscle relaxation, and nausea. A week later, Boyd saw his primary treating physician, Kenneth R. Luckay, M.D., complaining of ongoing pain in his neck, mid-back, and low-back. Dr. Luckay referred Boyd to physical therapy and an orthopedist.

In September 2007, Boyd presented to Gregory D. Riebel, M.D., at the offices of Virginia Orthopedic. Dr. Riebel assessed Boyd as suffering from significant muscle spasms through the cervical, thoracic, and lumbar regions and decreased range of motion in his lumbar spine. Boyd also tested positive for pain in his low back and right buttock regions in a straight leg test. Dr. Riebel ordered an MRI, which showed mild disc bulges at L4-L5 and L5-S1. Dr. Riebel diagnosed Boyd with cervical and lumbar sprains with sciatia. Following an emergency room visit where Boyd complained of back pain radiating into his lower extremities, Boyd received further x-rays and spinal injections. Dr. Riebel ordered a CT myelogram, which revealed mild disc bulging, facet hypertrophy, but no signs of neural

compression.   Boyd continued medicative treatment for his symptoms, but beyond a couple of initial sessions, Boyd did not pursue recommended physical therapy.

Around March 2008, Boyd reported short term memory loss to Dr. Luckay. Dr. Luckay referred Boyd to David Geldmacher, M.D., with the Department of Neurology at the University of Virginia ("UVA").   Electromyography tests showed no electrophysiological evidence of radiculopathy or peripheral neuropathy.   A second consultation in September 2008 largely reaffirmed these findings. Ultimately Boyd never received any medication, counseling, or formal mental health care for his alleged memory loss.   Boyd's neuropsychological report concluded that "his cognitive abilities do not present a barrier to his ability to work in his chosen field as an auto mechanic," but that pain issues and working within time constraints could impede his ability to perform such work.   (R. at 393.)

A residual functional capacity questionnaire completed by Dr. Geldmacher in October 2008, assessed Boyd with inattentativeness and reduced cognitive speed that would affect Boyd's ability to perform semiskilled and skilled work.   Dr. Geldmacher did not, however, find Boyd precluded in his abilities for less skilled work.   The UVA consulting physicians suggested that Boyd receive a pain management evaluation, opining that his cognitive complaints could be an ensuing consequence of ongoing physical pain.

Boyd then presented to the Comprehensive Pain Management Center ("CPMC") for treatment with G. Sam Samarasinghe, M.D. Dr. Samarasinghe found that Boyd suffered from sacroilitis and lumbar facet syndrome resulting from whiplash in the automobile accident, but that otherwise, his MRI was "rather benign." (R. at 395.) Boyd was prescribed sacroiliac join injections, nerve blocks, and radiofrequency denervation. CPMC physicians concluded that intermittent injections and medicative opiods would control Boyd's pain fairly well.

Despite the CPMC recommendations, records show that Boyd continued to see Dr. Luckay complaining of ongoing stiffness, pain, and lower back spasms. Dr. Luckay noted however that he was "not convinced [the pain was] as debilitating as [Boyd] ma[de] it out to be." (R. at 352.)

Through early and mid 2009, Boyd presented to the Roanoke Orthopaedic Center and Chheany W. Ung, M.D., with CPMC, complaining of left shoulder pain. Boyd was diagnosed with subacromial decompression and limited debridement of his left shoulder following an arthroscopic rotator cuff repair. Dr. Ung additionally noted Dr. Samarasinghe's diagnoses related to Boyd's lumbar region and opined that Boyd was likely at maximum medical improvement for chronic pain lasting almost two years in duration. (R. at 416.)

In September 2008, Dr. Luckay completed a physical residual functional capacity assessment on Boyd's behalf. He opined that Boyd could frequently lift twenty-five pounds, and occasionally lift fifteen pounds. Dr. Luckay specifically noted that these assessments were "more than [Boyd] reports self-tolerating." (R. at 338.) Dr. Luckay limited Boyd to sitting, standing, and walking no more than four hours in an eight-hour work day, but noted that little on the medical diagnostic tests supported his assessment and that the limitations were based primarily on Boyd's self-reported pain tolerance.

Dr. Samarashinghe offered a more limited residual functional capacity assessment on April 8, 2009 (outside the relevant time period of this case). Dr. Samarashinghe found that Boyd could sit for one hour and stand for forty-five minutes before needing to change positions, and he opined that Boyd was incapable of performing even low-stress jobs. In support of these assessments, Dr. Samarshinghe cited Boyd's "mild" degenerative disc disease and disc bulge. (R. at 377.)

Two state agency physicians reviewed the medical records and found that Boyd was capable of performing medium work, based on the relatively benign medical and diagnostic evidence. The physicians did, however, restrict Boyd from moderate exposure to workplace hazards.

At his hearing before the ALJ, the VE testified that someone with Boyd's residual functional capacity, age, and work history could perform a range of positions requiring light, unskilled exertion, such as a ticket taker, line attendant, or messenger. According to the VE, there are approximately 17,800 such jobs in the region and 343,300 jobs in the national economy. Relying on this testimony, the ALJ concluded that Boyd was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Boyd now challenges the ALJ's unfavorable ruling, arguing that the decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A) (2010).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

This court's review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).   This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).   It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.   It is not the role of this court to substitute its judgment for that of the Commissioner.   *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

On appeal, Boyd argues that substantial evidence does not support the ALJ's finding that he is not disabled. Specifically, Boyd argues that the ALJ erred in deeming his memory loss problems non-severe, according reduced weight to several of his treating sources, and finding his complaints of severe pain less than fully credible.

First, Boyd argues that the ALJ erred in her assessment of his mental impairments.   Boyd argues that the ALJ did not factor his mental impairments into her residual functional capacity assessment, finding his complaints of memory loss to be non-severe.   Given the scarce evidence on record supporting these complaints, I find that substantial evidence supports the ALJ's finding.

A treating physician's medical opinion will be given controlling weight when

it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). In the case of a consultative source, the ALJ has even wider discretion, because only a treating source's opinion is entitled to controlling weight. 20 C.F.R. §§404.1527(d); 416.927(d); *see also Sykes v. Apfel*, 228 F.3d 259, 266 n.7 (3d Cir. 2007).

In the present case, Boyd sought diagnostic and consultative testing for alleged memory loss from his primary treating physician and several neurological and memory disorder specialists at UVA. He did not, however, receive ongoing or long term treatment for these complaints, because tests performed by these physicians did not reveal evidence supporting a medical condition. Instead, the physicians opined that, to the extent that Boyd suffered from memory loss, this issue was more connected to his physical pain rather than to any cognitive or neurological disorder. Moreover, Boyd never sought the treatment of any mental health professional to address his secondary complaints of stress, depression, and suicidal thoughts.

Although Drs. Samarasinghe and Geldmacher found increased mental limitations in their residual functional capacity assessments, these findings were based on limited consultative examinations and contradicted the substantial medical and diagnostic evidence on record. Moreover, even their more restricted assessments were consistent with the residual functional capacity findings made by the ALJ. Given this evidence, the ALJ did not err in failing to order an additional consultative exam or in finding that Boyd's mental impairments were non-severe.

Finally, I note that the ALJ did nevertheless place some limits on Boyd's mental capacities in her residual functional capacity assessment. The ALJ limited Boyd to simple, routine, repetitive, unskilled work that did not require a production rate or pace. This evaluation reflects the ALJ's effort to account for Boyd's alleged impairments despite the scarce medical evidence supporting his complaints.

Second, Boyd argues that the ALJ erred in failing to accord proper weight to some of the medical opinion of record. Specifically, Boyd targets the ALJ's assessment regarding the findings of Drs. Luckay, Samarasinghe, and Geldmacher. As discussed above, Drs. Samarasinghe's and Geldmacher's opinions were based on limited evaluations of Boyd and were not entitled to treating source weight. As for Dr. Luckay, I disagree with the claimant's contention that the ALJ completely rejected Dr. Luckay's opinion. Although the ALJ's opinion reflects a reduced

weight as to Dr. Luckay's checklist residual functional capacity assessment, the opinion repeatedly cites Dr. Luckay's detailed diagnostic evaluations and findings with favor. This shows that she took into consideration Dr. Luckay's more extensive treatment notes and records, even if she discounted his truncated residual functional capacity assessment.

Lastly, Boyd contests the ALJ's evaluation that his allegations of pain were less than credible. This argument is without merit. The ALJ's assessment is consistent with the record, which shows that the diagnostic and medical evidence was inconsistent with Boyd's self-reported pain. Several of Boyd's treating sources, including Dr. Luckay, noted that prescribed treatment was expected to control Boyd's conditions. Moreover, there are several notes from multiple physicians questioning whether Boyd's pain allegations were true. Given this evidence, I agree with the ALJ's assessment as to Boyd's credibility.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: June 20, 2011

/S/  JAMES P. JONES
United States District Judge